IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNELL PETTIFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV803 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Donnell Pettiford ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits on January 12, 2007, alleging a disability onset date of November 23, 2004. (Tr. at 32, 81-83.)[2] His application was denied initially (Tr. at 27, 41-44) and upon reconsideration (Tr. at 28, 47-49). Thereafter, he

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #10].

requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 52.) Present at the hearing, held on August 6, 2009, were Plaintiff, his attorney, an impartial vocational expert, and an impartial medical expert. (Tr. at 32.) At the hearing, Plaintiff amended his alleged disability onset date to February 6, 2007. The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 40) and, on August 27, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since February 6, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma (stable), diabetes mellitus, low back pain, and allergic rhinitis (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except [the claimant should] avoid pulmonary irritants.

(Tr. at 34-35.)

The ALJ then considered the vocational expert's testimony regarding the above residual functional capacity ("RFC") and determined that, although Plaintiff was unable to perform any of his past relevant work, he could perform other jobs that exist in significant numbers in the national economy. (Tr. at 39.) Plaintiff therefore was not under a "disability," as defined in the Act, from his alleged onset date through the date last insured. (Tr. at 39-40.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

4

disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: asthma (stable), diabetes mellitus, low back pain, and allergic rhinitis. (Tr. at 34.) The ALJ found at step three that these impairments did not meet or equal a disability listing. At step four, the ALJ determined that Plaintiff could perform medium work without exposure to pulmonary irritants, but that with those limits, Plaintiff could not return to his past relevant work. (Tr. at 34-38.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the community and was therefore not disabled. (Tr. at 39-40.)

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

Plaintiff now argues that the ALJ erred in (1) "failing to accord controlling weight to the opinions of [Plaintiff's] treating physicians without citing persuasive contradictory evidence," (2) "finding that [Plaintiff] can do medium work," and (3) "failing to include in his hypothetical question to the VE all of [Plaintiff's] significant impairments." (Pl.'s Br. [Doc. #13] at 4, 6, and 8.) He also raises two challenges to the ALJ's credibility determination, arguing that the ALJ erred "by failing to make specific findings regarding the degree of severity of [Plaintiff's] impairments," and by determining Plaintiff's RFC before assessing his credibility. (Pl.'s Br. at 8-9.) Defendant, in turn, contends that substantial evidence supports the ALJ's final disability determination and urges that the determination be affirmed. (Def.'s Br. [Doc #16] at 14.)

A.     Treating Physician Opinions

Plaintiff first claims that the ALJ violated 20 C.F.R. § 404.1527(c)(2), better known as the "treating physician rule,"[6] in assigning little weight to the opinions of Drs. William Yount and Donald Spencer. (Pl.'s Br. at 4-6.) The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security

---

[6] This provision was previously codified at 20 C.F.R. § 404.1527(d).

Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

In the present case, Dr. Yount completed a medical source statement on January 9, 2007 in which he opined that Plaintiff's asthma limited him to sitting for 2-3 hours, standing for 1-2 hours, bending for 1-2 hours, and walking for 1-2 hours in the course of an eight-hour workday. (Tr. at 157) Dr. Yount completed a second medical source statement on August 4, 2008, positing that Plaintiff could sit for no more than 15 minutes without needing to change positions and could stand or walk for only 15 minutes before needing to sit down. He also attested that Plaintiff would need rest breaks at two-hour intervals for a total of two hours in addition to his regularly scheduled work breaks, should never lift over 10 pounds, should only occasionally lift up to 10 pounds, should never balance, and should only occasionally stoop or repetitively use his hands. (Tr. at 269-72.)

On June 26, 2009, Dr. Spencer completed a medical source statement opining that Plaintiff could sit for more than 3 hours before needing to alternate positions and could stand and walk for six hours in an eight-hour workday. (Tr. at 296-97) In addition, he stated that Plaintiff could perform frequent balancing, stooping, and repetitive use of his hands. (Tr. at 299-300.) Dr. Spencer did not find that Plaintiff would require any extra rest breaks, but Dr. Spencer did opine that Plaintiff would miss more than three days of work per month due to his impairments or treatment thereof. (Tr. at 301.) Like Dr. Yount, Dr. Spencer also attested that Plaintiff should never lift more than 10 pounds and should lift up to 10 pounds only occasionally. (Tr. at 299.)

The ALJ gave little weight to either physician's opinion regarding Plaintiff's RFC. As he explained in his decision, "[t]he course of treatment pursued by [Dr. Yount] has not been

9

consistent with what one would expect if [Plaintiff] were truly disabled." Similarly, the ALJ found that Dr. Spencer's "opinion contrasts sharply with the other evidence of record, which renders it less persuasive." (Tr. at 38.)

This inconsistency and lack of support in the record is illustrated by comparing the medical source statements with the treatment notes from the same practice for the same time periods. For example, during an examination on March 9, 2009, Plaintiff reported that he had been well during the past year, with no exacerbations of asthma, hospitalizations, or outpatient escalation therapy. His night-time coughing had "disappeared" and he was assessed as an individual "with asthma who demonstrates clinical stability when adherent to prescribed therapy." (Tr. at 280). Dr. Spencer subsequently observed in his treatment note from the June 2009 visit that Plaintiff "does not have back problems now" and that "[h]is primary disability is . . . from his asthma as he can't do his janitorial work because of the chemicals he is exposed to in that line of work." (Tr. at 276.) Despite mentioning no other disabling impairments in either his clinic note or medical source statement, Dr. Spencer opined that Plaintiff is limited to no more than occasional lifting and carrying of up to ten pounds.[7] This significant restriction finds support nowhere else in the record aside from the medical source statement of Dr. Yount, which the ALJ also assigned little weight.

As noted above, the ALJ found that "[t]he course of treatment pursued by [Dr. Yount was not] consistent with what one would expect if [Plaintiff] were truly disabled." Dr. Yount, an immunology specialist, personally treated Plaintiff on just three occasions between 2005 and

---

[7] Dr. Spencer referenced both Plaintiff's (stable) diabetes and mildly enlarged prostate in his clinic note but did not indicate that either cause Plaintiff any added physical limitations.

2008, the last two of which included filling out medical source statements. (Tr. at 248-50, 166-68, and 259-63.) In the interim, Plaintiff received immunotherapy and Xolair through Dr. Yount's office to treat his allergic rhinitis and asthma. Plaintiff ceased his therapy in October 2007 after losing his insurance but resumed in July 2008 when he regained insurance through his wife. (Tr. at 259.) By all accounts, Plaintiff's allergy and asthma medications kept his symptoms well-controlled when taken as prescribed, with rare flare-ups occurring only when he missed doses or took his medications incorrectly. (See Tr. at 166-67, 169, 232-33, 237-39, 259.)

The records also reflect that Plaintiff developed joint pain in late 2006, at which time it was described as "diffuse," "intermittent," and requiring no medications. (Tr. at 170.) At the time of his first medical source statement in January 2007, Dr. Yount recommended that Plaintiff take extra strength Tylenol to "provide some extra relief" for joint pain and ordered x-rays of Plaintiff's shoulders, knees, hand and wrists. (Tr. at 167.) Those tests revealed "[n]o features . . . to suggest an inflammatory or erosive arthropathy." (Tr. at 247.) At some point prior to Dr. Yount's second medical source statement, Plaintiff was prescribed Celebrex for his continuing shoulder pain, but he voluntarily stopped taking the medication prior to his appointment, resulting in "some aching in the shoulders." Nevertheless, Dr. Yount found that Plaintiff had no joint tenderness, deformity, or effusions upon exam. He also noted a full range of motion in all of Plaintiff's joints. (Tr. at 263.) As with Dr. Spencer, Dr. Yount's relatively benign findings on examination are inconsistent with his opinion that Plaintiff is significantly limited in almost every facet of functioning. In addition, Dr. Yount's medical source statement from August 4, 2008 indicates that Plaintiff suffers from low blood pressure, a history of

11

hypoxemia, neck pain and spurs, and a reduced range of motion in his neck and low back (Tr. at 268), but these findings find no support in Dr. Yount's own records or elsewhere. Treatment notes for another provider on August 4, 2008 note no such concerns, and refer only to Plaintiff's failure to correctly take asthma medications. In sum, these inconsistencies and the contrary evidence in the record all support the ALJ's decision to accord little weight to Dr. Yount's opinion.

Rather than rely on the opinions of Drs. Yount and Spencer, the ALJ assigned great weight to both the physical RFC assessments of the state agency physicians (see Tr. at 204, 235) and the hearing testimony of Medical Expert Helen C. Cannon (Tr. at 22-23), a physician who "had the opportunity to review all the evidence of record and base her decision thereupon" (Tr. at 38). Dr. Cannon opined that Plaintiff's "asthma is well controlled and clinically stable when [Plaintiff] properly adheres to using his prescribed medication. She also noted [Plaintiff's] history of sarcoidosis, back pain, diabetes, and left shoulder pain, but opined that none of the conditions either meet or equaled a listing." (Tr. at 35.) State agency physicians Robert Gardner and E. Woods concurred that Plaintiff could perform medium work with no concentrated exposure to lung irritants. (Tr. at 204, 235.) In particular, Dr. Gardner found that, as of May 2007, Plaintiff's asthma and diabetes were well-controlled. He also noted that Plaintiff continued to work about 15 hours per week and perform various household chores. (Tr. at 204.) Four months later, in September 2007, Dr. Woods specifically noted that Plaintiff had developed pain and some loss of mobility in his left shoulder. Nevertheless, he found that Plaintiff still retained the ability to perform medium work. (Tr. at 235.)

The Court finds that the opinions of these non-examining sources are consistent with the medical evidence as a whole. Accordingly, the ALJ was entitled to rely upon them as substantial evidence for his disability determination in this case. See SSR 96-6p (stating that the opinions of state medical consultants must be considered and weighed as those of highly qualified experts); Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) (noting that an ALJ can rely upon the opinion of a non-treating medical expert where that expert has thoroughly reviewed the record and the opinion is consistent with the record as a whole); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (noting that the opinion of a non-examining physician can constitute substantial evidence in support of the ALJ's decision when it is consistent with the record as a whole). The Court therefore finds no error.

B. Credibility

Plaintiff next contends that the ALJ erred in finding that his subjective complaints were not entirely credible. In Craig, 76 F.3d at 594-95, the Fourth Circuit provides a two-part test for evaluating a claimant's subjective complaints. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). In the present case, Plaintiff alleged shortness of breath and pain resulting from his documented asthma and back impairments, and the ALJ determined that these impairments "could reasonably be expected to cause [Plaintiff's] alleged symptoms." (Tr. at 37.)

The second part of the test requires that the ALJ consider all available evidence, including Plaintiff's statements about his pain and other symptoms, in order to evaluate "the intensity and persistence" of the symptoms, and "the extent to which it affects [his] ability to work." Craig, 76 F.3d at 596. Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms . . . will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;

14

> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984).

In the present case, Plaintiff challenges the ALJ's credibility determination on two fronts. First, he argues that the ALJ erred by deciding Plaintiff's RFC before assessing his credibility. (Pl.'s Br. at 9.) Second, Plaintiff contends that, "although the ALJ found that the claimant's subjective complaints were not credible to the degree alleged, the ALJ 'did not make specific findings as to the degree to which [Plaintiff's] subjective complaints *were* credible.'" (Pl.'s Br. at 8) (quoting Riley v. Chater, 57 F.3d 1067, 1995 WL 361483, at *2 (4th Cir. 1995) (Table)).

Plaintiff's first contention presents an "increasingly common argument" regarding the adequacy of credibility determinations. See Racey v. Astrue, No. 5:12CV00036, 2013 WL 589223, at *6, n.17 (W.D. Va. Feb. 13, 2013) (unpublished). A RFC determination, like the credibility determination informing it, must take into account all available evidence, including credible complaints made by the plaintiff. Little v. Colvin, No. 2:12cv300, 2013 WL 2489173, at *12 (E.D. Va. June 7, 2013) (unpublished). Many courts, including several within the Fourth Circuit, have noted an inherent conflict between this requirement and the following language used in many administrative decisions, including the one at hand:

15

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. at 37.) As the Little court notes,

> [t]he use of this boilerplate language creates two problems. First, the Regulations instruct the ALJ to evaluate the consistency of a plaintiff's statements against all of the evidence of record, and not against just the ALJ's own RFC assessment. 20 C.F.R. § 404.1529(c)(4). . . . The second problem, which is correlated to the first, is that the ALJ's conclusion regarding Plaintiff's credibility, indicates that the ALJ made his RFC determination before taking into account Plaintiff's credibility. Therefore, the ALJ could not have made his RFC determination using all of the information in the record, because he had not yet made his credibility determination for Plaintiff's statements.

2013 WL 2489173, at *13.

Nevertheless, the use of boilerplate language is not error *per se*. Rather, a credibility determination using such language is supported by substantial evidence if the substance of the decision corroborates the determination. Racey, 2013 WL 589223, at *6; Webb v. Astrue, No. 2:11CV00103, 2012 WL 3061522, at *16-17 (N.D. W. Va. July 26, 2012) (unpublished). Here, the ALJ dedicated two full pages of his decision to discussing the relevant evidence, including plaintiff's testimony and detailed medical records. He then explained his reasons for discounting the opinions of Drs. Spencer and Yount and for crediting other opinion evidence, as set out above, based on its consistency with the record as a whole. (Tr. at 38.) The ALJ particularly noted Plaintiff's frequent assertions to his doctors that he was doing well as far as his breathing was concerned, and that his medications kept his allergy and asthma symptoms well-controlled when taken as prescribed. (See Tr. at 36-38, 166-67, 169, 232-33, 237-39, 259.) Plaintiff

16

similarly acknowledged that various medications ease his shoulder and back pain (Tr. at 16-17) and that he is able to perform various household chores and attend church (Tr. at 19-21). Based on these extensive findings, the Court concludes that the substance of the decision corroborates the ALJ's credibility determination.

Plaintiff next argues that the ALJ erred by failing to state "just *how* severe he believed [Plaintiff's] shortness of breath was, or *why*." (Pl.'s Br. at 8.) However, the ALJ explicitly found that Plaintiff's shortness of breath was limiting only to the extent consistent with the evidence of record, which indicated that his symptoms, including shortness of breath, were well-controlled through routine and/or conservative treatment. (See, e.g., Tr. at 14, 38.) Based on this finding, the ALJ concurred with the state agency assessors' opinion that Plaintiff could perform medium work with avoidance of concentrated exposure to fumes, odors, dusts, gases, and lung irritants. The ALJ therefore explained both the severity of Plaintiff's shortness of breath and his reasons for that assessment in a manner consistent with the substantial evidence.

C. RFC

Plaintiff next argues that substantial evidence fails to support the ALJ's finding that he has the RFC to perform medium exertional level work. However, this contention relies solely on the success of Plaintiff's arguments as to the treating physician opinions and credibility. As set out in detail above, the ALJ properly evaluated both the medical evidence and Plaintiff's subjective statements in formulating his RFC. The Court finds no error.

D.   Hypothetical Question

In his final argument, Plaintiff contends that "if the ALJ erred in rejecting the opinions of Drs. Yount and Spencer, and finding that [Plaintiff] can do medium work, then his hypothetical to the VE was also fatally flawed." (Pl.'s Br. At 7.) However, because the ALJ did *not* err in rejecting the treating physician opinions or formulating the RFC, Plaintiff fails to demonstrate any error on this basis.

Plaintiff alternatively argues that "the ALJ committed further error in his hypothetical question to the VE: He failed to include [Plaintiff's] shortness of breath, a significant impairment." (Id.) However, the ALJ specifically found that Plaintiff must avoid pulmonary irritants and included this finding in both his RFC and the corresponding hypothetical question. (Tr. at 24, 36, 39.) Plaintiff does not point to any medical evidence that he is limited due to shortness of breath beyond this restriction. In the circumstances, substantial evidence supports the hypothetical question as posed by the ALJ.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleading [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 30th day of January, 2015.

                                                          /s/ Joi Elizabeth Peake
                                                        United States Magistrate Judge